## Kuh's Estate

*William M. Boenning,* for exceptant.

*Edmonds, Obermayer & Rebmann,* contra.

LAMORELLE, P. J., January 3, 1935.—The will of Joshua Kuh gave his estate to collaterals. Claiming as widow, Mary Duncan Kuh filed her election as such to take against the will; by agreement she was awarded $16,000 as widow. The awards made by the auditing judge to the collaterals and to her as widow were made subject to transfer inheritance tax. Afterwards, the register assessed tax on this sum at 10 percent, as well as on the rest of the estate. On appeal, the hearing judge reduced the tax on the $16,000 to 2 percent. The Commonwealth excepted, and thus the matter comes before us.

The real question is this: Where upon the audit of an account the auditing judge fixes the status of the claimant, does the register exceed his authority in ignoring such finding and adopting a different standard despite such award?

And this necessarily involves the subsidiary question: Does a compromise settlement bind all parties, including the Commonwealth, especially where the Commonwealth is represented at the audit?

The hearing judge in a terse and concise statement covered the whole ground thus:

"I see no difference between the settlement of a creditor's claim and the settlement of a distributee's claim. In each case, there is a disputed question of fact, and the courts very practically have established the rule that the determination of these matters which the parties make for themselves in good faith shall be accepted in the determination of the tax."

A reference to the adjudication of Judge Henderson (which was made a part of the record) shows that, as a result of a conference, the claimant as widow who elected to take against the will compromised her claim for $16,000; that this sum was awarded her in this language, "to Mary Duncan Schuff Kuh, in satisfaction of her claim as widow of the decedent and of any and all other claims which she might have against the estate" (and the record further shows that the counsel for the claimant said in open court: "The award should be made to Mary Duncan Kuh, and there will be some difficulty if it is made otherwise", and that the court said, "I will use both names"; and further shows "transfer inheritance tax is awarded to the Commonwealth in accordance with the provisions of this adjudication").

We cannot but stress this award of tax to the Commonwealth, and it would seem to follow that the register exceeded his authority when he ignored it.

Nor can we refrain from stressing the fact that the Commonwealth was

present, actually by counsel, made no objections, and therefore tacitly acquiesced in the award. Further, the Commonwealth filed no exceptions to the adjudication nor to the phraseology of the award and of the ruling on the tax. The account was in due course confirmed absolutely and thus becomes the law of the case, binding all parties, which necessarily includes the Commonwealth.

That the auditing judge in the first instance may determine not only what is taxable but also the amount of tax is well settled in ordinary practice. Tobey's Est., 10 D. & C. 229, is not an authority to the contrary. The auditing judge having found the amount to be taxed and the character of the distributees, the Commonwealth had to do no more than assess the tax on such basis. The hearing judge cites Pepper's Estate, 2 Dist. R. 611, affirmed in 159 Pa. 508, as sustaining his opinion.

The analogy is complete. In that case a son claimed; as a son, he would be entitled under the intestate law. He was ignored in the will, the estate being given to collaterals. A compromise settlement was made with him, and it was held (there being no direct tax at the time) that only so much as passed under the will less the amount paid to the son was taxable, he not taking as assignee.

In the instant case, the claimant claims as widow; she presents no claim other than that (because if she did, to such extent, there would be no tax). As widow, the law gives her certain rights; to the extent that she settles for $16,-000, she is necessarily recognized as widow; it is so found by the auditing judge, who assessed tax in accordance with his findings.

One of the later cases illustrative of this principle is Taber's Estate, 257 Pa. 81 (our opinion, which was affirmed by the Supreme Court, being reported in 25 Dist. R. 546), which, incidentally, was also one where the auditing judge assumed jurisdiction. Testatrix had left her entire estate to charitable institutions. Certain relatives (collaterals) instituted a contest; an agreement was reached by which the auditing judge was requested to award a sum certain to them in full settlement of their claims. No testimony was offered, but it was suggested that the amount so allowed was not taxable. The auditing judge properly held the entire estate was taxable, and his ruling was upheld. As the entire estate passed, even under the agreement to collaterals and to charities, tax was necessarily to be assessed on the entire amount thus passing. The contention there made, that a claim against the estate was not taxable, was unsound and not in accordance with the reason for the decision in Pepper's Estate, supra, and evidently arose from a misapprehension of the logic of that case.

We see no distinction between the collateral inheritance law as it stood at the time of the decision in Pepper's Estate, supra, and other kindred cases: Kerr's Estate, 159 Pa. 512; Hawley's Estate, 214 Pa. 525; and the transfer inheritance tax law now in force, save as to wording intending to cover direct as well as collateral legatees or distributees.

What Judge Penrose so well said in his opinion in Kerr's Estate, 2 Dist. R. 535, 536, affirmed on this opinion by the Supreme Court, supra, is the law of this Commonwealth, and it is peculiarly applicable to the instant case:

"No liberality of construction can extend the language of the statute so as to make it include either moneys paid to extinguish the title of persons claiming adversely to the decedent whose estate is liable to taxation, or property surrendered by way of compromise to the persons so claiming, and thus never forming part of the decedent's estate at all. Such persons are neither legatees or devisees, heirs or next of kin, nor are they grantees, etc., under assignments or transfers made or intended to take effect after the death of the bargainer.

The allowance or compromise of their claims simply reduces the estate afterwards passing to volunteers, with the same effect as if the reduction had been caused by the payment of debts, or as if the payment or surrender had been the result of a suit terminating in favor of the claimant."

It must be borne in mind that no one is here seeking an exoneration from taxation. The one and only contention is that taxes be assessed on all the estate passing; i. e., on the clear value thereof, but that the tax must be assessed as defined by the auditing judge in his adjudication of the executor's account.

By no stretch of the imagination could the one who claimed as widow be said to be "assignee" of the legatees and to take through them, and that in effect is the claim made by the Commonwealth.

Accordingly, January 3, 1935, all exceptions are dismissed, the rulings of the hearing judge are upheld, that of the register reversed, and the record is remitted to him for correction.